UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Family Wireless #1, LLC, et al.,

       Plaintiffs,

v.

Automotive Technologies, Inc.,

       Defendant.

_____/

Case No. 15-11215

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) [11]**

This matter comes before the Court on Defendant Automotive Technologies' motion to transfer pursuant to 28 U.S.C. § 1404(a). Plaintiffs are forty-one Wireless Zone retail store franchisees from thirteen states. Defendant is the franchisor. Twenty-four Plaintiffs have franchise agreements with valid forum-selection clauses specifying that all litigation between the parties will take place in Connecticut. ("FSC Plaintiffs"). Of the seventeen Plaintiffs whose agreements do not have valid forum-selection clauses, ("Non-FSC Plaintiffs"), only ten are located in Michigan. The other seven are located in Minnesota and Indiana. Defendant asks that the Court either transfer this entire case to the District of Connecticut or sever the FSC Plaintiffs and transfer them to the District of Connecticut. For the reasons stated below, the Court GRANTS Defendant's request to transfer the entire case to the District of Connecticut.

**I.    Background**

Defendant is the franchisor of Wireless Zone retail stores. These stores specialize in the sale and repair of wireless communication devices. The Wireless Zone franchise

system currently includes over 350 franchised retail stores in 25 states and the District of Columbia.

Plaintiffs are a group of forty-one franchisees who own more than one-hundred Wireless Zone franchisees in thirteen states. These states (and the number of Plaintiffs from each) are: Michigan (10), New York (8), Minnesota (6), Pennsylvania (4), Virginia (3), Massachusetts (2), Ohio (2), Florida (1), New Jersey (1), New Hampshire (1), Indiana (1), Missouri (1), and West Virginia (1). Their relationships with Defendant are governed by franchise agreements. The franchise agreements all contain forum-selection clauses stating, in relevant part, either:

> This Agreement will be governed by and interpreted by the laws of the State of Connecticut. You agree that any causes of action between the parties with respect to any issue arising out of or relating to this Franchise Agreement, the breach thereof, the relationship between Franchisor and Franchisee or any other issue or dispute will only be brought in either the state or federal courts of Connecticut. . . . You irrevocably submit to the jurisdiction of these courts, waive any objection you may have to either the jurisdiction or the venue of these courts and agree not to argue that these courts are inconvenient forums.

or

> This Agreement will be governed by and interpreted by the laws of the State of Connecticut. You agree that any causes of action between you and ATI for any issue arising out of relating to this Franchise Agreement, the breach thereof, the relationship between you and ATI or any other issue or dispute will only be brought in either the state or federal courts of Connecticut. . . . You irrevocably submit to the jurisdiction of these courts, waive any objection you may have to either the jurisdiction or the venue of these courts and agree not to argue that these courts are inconvenient forums.

(Def.'s Mot., Ex. A at 7-8.)

These forum-selection clauses were disclosed to Plaintiffs before they signed their franchise agreements via a Franchise Disclosure Document (FDD), which includes a

2

description of each party's rights and obligations and a copy of Defendant's then-current franchise agreement. The FDD cover page states in all caps as a "Risk Factor" to consider before buying a franchise that "[t]he franchise agreement requires you to resolve disputes with us by litigation only in Connecticut." (*Id.* at 27.) And the FDD itself states that the franchise agreement contains a choice of forum clause requiring litigation in "[s]tate or federal court in Connecticut." (*Id.* at 29.)

Although all of the franchise agreements contain forum-selection clauses, the parties agree that the Michigan and Indiana Plaintiffs' clauses are not valid. *See* Mich. Comp. Laws § 445.1527(f); Ind. Code § 23-2-2.7-1(10). The parties dispute whether the Minnesota Plaintiffs' franchise agreements contain valid clauses. For the rest of the Plaintiffs, there is no dispute that their clauses are valid.

Originally, a group of forty-two Plaintiffs filed a seven-count complaint alleging breach of contract, misrepresentation, and violations of Michigan and Connecticut franchise laws. Defendants responded with a motion to dismiss for lack of personal jurisdiction and for failure to state a claim and a separate motion to transfer venue under 28 U.S.C. § 1404(a). Plaintiffs then filed a thirteen-count amended complaint, adding claims for violations of New York, Virginia, Maryland, Pennsylvania, Ohio, and West Virginia franchise laws. This amended complaint also dropped some of the Plaintiffs included in the original complaint and added new ones, bringing the total number to forty-three. Two of these Plaintiffs were later voluntarily dismissed. Following the amended complaint, Defendant withdrew its motion to dismiss. The Court is now left to decide this motion to transfer.

## II.    Standard

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In the typical case, the Court's decision on whether to transfer is based on a case-by-case consideration of both private and public-interest factors. *Domino's Pizza PMC v. Caribbean Rhino, Inc.*, 453 F. Supp. 2d 998, 1007 (E.D. Mich. 2006). These factors include:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). The party seeking transfer bears the burden of proving that a transfer is appropriate by a preponderance of the evidence. *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006). "Courts have broad discretion to transfer an action pursuant to section 1404." *Gen. Motors Co. v. Dinatale*, 705 F. Supp. 2d 740, 752 (E.D. Mich. 2010).

The analysis changes, however, when the parties have a contract containing a valid forum-selection clause. In that situation, as the Supreme Court recently stated, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 575 (2013). In other words, "a valid forum selection clause [should be] given controlling weight in all but the most exceptional circumstances." *Id.* at 581.

4

In *Atlantic Marine*, the Supreme Court held that "the presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* First, unlike in a typical § 1404(a) transfer analysis, "the plaintiff's choice of forum merits no weight." *Id.* Furthermore, it is the party "defying the forum-selection clause" who bears the burden of proof that transfer to the forum specified in the clause is unwarranted. *Id.* Second, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 582. Instead, the court should consider the public-interest factors only. *Id.* "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Third, "when a party bound by a forum-selection clause flouts its contractual obligations and files suit in a different forum, a § 1404 transfer of venue will not carry with it the original venue's choice of law rules." *Id.*

## III.  Analysis

The Court will perform its analysis in this way. First, the Court will determine whether it has personal jurisdiction over Defendant as this impacts whether the Court has the power to transfer the case pursuant to Section 1404(a). The Court will next determine whether transfer pursuant to Section 1404(a) is appropriate. In doing this, the Court will divide Plaintiffs into two groups: those with valid forum-selection clauses and those without valid forum-selection clauses. *See In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014) (stating that district courts should divide parties in this way when addressing transfer motions in multi-party cases involving forum-selection clauses). The Court will then weigh the private-interest factors of each group to determine if they point in favor of transfer. After this preliminary weighing, the Court will consider the effect of the public-interest factors and

determine whether to keep the entire case in this district, to transfer the entire case to the District of Connecticut, or to sever the FSC Plaintiffs and transfer only them to the District of Connecticut.

### A. Personal Jurisdiction

There are two principal statutes that provide the Court with the authority to transfer venue: 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a).[1] As stated above, Section 1404(a) allows district courts to transfer venue to any district where the case could have been brought "for the convenience of the parties, in the interests of justice." 28 U.S.C. § 1404(a). A court may transfer a case under this statute only where it has personal jurisdiction over the defendant. *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993). Where personal jurisdiction is lacking, a court may only transfer pursuant to Section 1406(a). *Id.* (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)). That statute provides that where venue is improper, the district court "shall dismiss, or if it be in the interests of justice transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Thus, the existence of personal jurisdiction over a defendant, or lack thereof, determines the proper statute under which a court may grant a transfer of venue." *Global Crossing*

---

[1] The Court may also transfer venue pursuant to 28 U.S.C. § 1631. It states that when a court "finds that there is a want of jurisdiction, the court shall, if it is in the interests of justice transfer such action . . . to any other such court in which the action . . . could have been brought . . . ." 28 U.S.C. § 1631. The Court of Appeals are split as to whether this statute allows for transfers of venue *only* when subject matter jurisdiction is lacking or when either subject matter *or* personal jurisdiction are lacking. *See Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) ("We note that circuits have split on the question of whether § 1631 provides for transfers only in the event that a federal court lacks subject matter jurisdiction or also in the event that the court lacks personal jurisdiction."). The Sixth Circuit allows for transfer under Section 1631 "in the event the court lacks 'jurisdiction'—whether subject matter or personal jurisdiction." *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009).

*Telecommunications, Inc. v. World Connection Grp., Inc.*, 287 F. Supp. 2d 760, 764 (E.D. Mich. 2003). For this reason, the Court must first determine whether it has personal jurisdiction over Defendant before it can determine whether transfer pursuant to Section 1404(a) is appropriate.

A federal court may exercise personal jurisdiction over a defendant if jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014). Although these are two separate questions, "[u]nder Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). To satisfy the requirements of due process, the defendant must have "such minimum contacts with the forum state that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice." *Beydoun*, 768 F.3d at 505 (internal quotations omitted). These minimum contacts fall into two categories: (1) "general jurisdiction," where the defendant's contacts with the forum state "are so continuous and systematic as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); and (2) "specific jurisdiction," where the plaintiff's cause of action "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

This case involves a Connecticut defendant who is neither headquartered nor has a principle place of business in Michigan and forty-one Plaintiffs, thirty of which have no

7

discernable connection to Michigan. These out-of-state Plaintiffs are not located in Michigan, do not own any franchises in Michigan, did not enter into the franchise agreements at issue in this case in Michigan, and did not negotiate the agreements in Michigan. Although Defendant does have contacts with Michigan—for example, it is registered to do business in Michigan, it has franchise agreements with Michigan retailers, it sends agents to Michigan, and it sells products to its Michigan retailers—these contacts are far from sufficient to establish general jurisdiction over Defendant. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014) (stating that it would be an "exceptional case" where a state had general jurisdiction over a defendant who was neither incorporated nor had its principal place of business there). And there is no basis to believe that the out-of-state Plaintiffs' claims—all based on their individual franchise agreements with Defendant—"arise from" Defendant's activities in this state in a way sufficient to support specific jurisdiction. *See Beydoun*, 768 F.3d at 506-508 (holding that for a cause of action to "arise from" a contact, the "cause of action must be proximately caused by the defendant's contacts with the forum state").[2]

This does not end the inquiry, however. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).

---

[2] That the Court has specific jurisdiction over some of the claims in this case—those between the Michigan Plaintiffs and Defendant—is irrelevant. "Personal jurisdiction must exist for each claim asserted against a Defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). The Court may not exercise personal jurisdiction over some Plaintiffs solely because it has personal jurisdiction over others in the same case. *See Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 06-126, 2006 WL 3043115, at *6 (S.D. Ohio Oct. 4, 2006).

Here, at least for the purposes of this motion, Defendant has waived its objection to personal jurisdiction. Originally, Defendant filed both a motion to dismiss for lack of personal jurisdiction (and for failure to state a claim) and a motion to transfer under Section 1404(a) in this case. Despite its objection to personal jurisdiction, Defendant informed the Court that "for the purposes of [its motion to transfer] only, [Defendant] does not dispute Plaintiffs' allegations that the Court has personal jurisdiction over [Defendant] as it relates to the Non-Michigan Plaintiffs' claims." (Def.'s Mot. to Transfer at 20 n.6.) Before the Court had the chance to rule on either of Defendant's motions, however, Plaintiff filed an amended complaint. This prompted Defendant to withdraw its original motion to dismiss. Accordingly, there is currently no objection to personal jurisdiction before the Court, and Defendant expressly waived any objection to personal jurisdiction it had as it pertained to this motion for transfer. So although roughly three-fourths of the Plaintiffs' claims in this case have no connection to this state sufficient to give the Court personal jurisdiction over Defendant, Defendant's waiver gives the Court the authority to transfer this case pursuant to Section 1404(a).[3]

---

[3] For similar reasons, venue (another necessary predicate to transfers under Section 1404(a)) is proper in this district as well. Like personal jurisdiction, objections to venue can be waived if not timely raised. *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939); Fed. R. Civ. P. 12(h). Defendant has never raised an objection to venue in this case—and has not done so in this motion—so it is possible that it has waived any objection it may have had.

Nevertheless, even if Defendant has not waived an objection to venue, venue is still proper in this district—at least for the purposes of this motion. Venue is governed by 28 U.S.C. § 1391. Under Section 1391(b)(1), "A civil action may be brought in . . . a judicial district in which any defendant resides." This is known as "residential venue." 14D Fed. Prac. & Proc. Juris. § 3805 (4th ed.). Residency is in turn defined in Section 1391(c). A corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . ." 28 U.S.C. § 1391(c)(2). Because Defendant waived its objections to personal

### B. Validity of Forum-Selection Clauses

After *Atlantic Marine*, the existence of a valid forum-selection clause is now a critical factor in the Court's decision whether to transfer a case. It is therefore important for the Court to determine which Plaintiffs have valid forum-selection clauses in their franchise agreements and which do not. For the vast majority of Plaintiffs there is no dispute. The Michigan Plaintiffs' agreements do no contain valid forum selection clauses under Michigan Law. Mich. Comp. Laws § 445.1527(f). The same goes for the lone Indiana Plaintiff. Ind. Code § 23-2-2.7-1(10). On the other side, all of the out-of-state Plaintiffs, except for those from Minnesota, have valid clauses. The dispute accordingly centers on the Minnesota Plaintiffs.

Like all the other Plaintiffs, the Minnesota Plaintiffs' franchise agreements contain forum-selection clauses stating that any litigation between the parties arising out of their franchise agreements "will only be brought in either the state or federal courts of Connecticut." These franchise agreements also contain an additional clause:

> Minn. Stat. Sec. 80C.21 and Minn. Rule 2860.4400J prohibit ATI from requiring litigation to be conducted outside of Minnesota. In addition, nothing in the Disclosure Document or Agreement can abrogate or reduce any of your rights as provided for in Minnesota Statutes, Chapter

---

jurisdiction as discussed above, the Court has personal jurisdiction over it. Since the Court has personal jurisdiction over Defendant, Defendant is deemed to "reside" in this district under Section 1391(c)(2). And, since Defendant "resides" in this district, venue is proper under Section 1391(b)(1). *See Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1048 (S.D. Ohio 2002) (holding that venue was proper over a corporate defendant under Section 1391(b)(1) where the defendant waived its objections to personal jurisdiction).

The Court expresses no opinion as to whether it has personal jurisdiction over Defendant (or whether venue is proper) only for the purposes of this motion or whether the Court's power extends to the entire action.

> 80C or your right to any procedure, forum or remedies provided for by the laws of the jurisdiction.

(Def.'s Mot., Ex. A at 47.)

Plaintiffs argue that the forum-selection clauses in their agreements are invalid because they "require[] litigation to be conducted outside of Minnesota." (*Id.*) The Court agrees. The forum-selection clause plainly states that by signing the agreement the franchisee agrees to only bring litigation relating to the agreement in Connecticut. In other words, it requires that the franchisee file litigation in Connecticut and nowhere else. This comports with Defendant's own interpretation of the clause as evidenced in their Franchise Disclosure Document: "[t]he franchise agreement *requires* you to resolve disputes with us by litigation *only* in Connecticut." (*Id.* at 27) (emphasis added). Because, as the franchise agreement states, Minnesota law prohibits Defendant "from requiring litigation to be conducted outside of Minnesota," (Def.'s Mot., Ex. A at 47), the forum-selection clauses in these agreements are invalid.

Defendant cites both *Allegra Holdings, LLC v. Davis*, No. 13-13498, 2014 WL 1652221 (E.D. Mich. Apr. 24, 2014) and *Ramada Worldwide, Inc. v. Grand Rios Investments*, LLC, No. 13-3878, 2013 WL 5773085 (D.N.J. Oct. 23, 2013), to support the contrary position. These cases are distinguishable. In both *Allegra Holdings* and *Ramada Worldwide*, a franchisor sued Minnesota franchisees outside of Minnesota. Based on the addendum that also exists in the Minnesota franchise agreements in this case, the franchisees argued that Minnesota law required that all litigation against them take place in Minnesota and moved for a transfer of venue. The Courts disagreed. A franchisor does not "require litigation to be conducted outside of Minnesota" by suing a franchisee in a

different state. *Allegra Holdings*, 2014 WL 1652221, at *3; *Ramada Worldwide*, 2013 WL 5773085, at *2. Here, on the other hand, it is the franchisees who are suing the franchisor, the exact opposite situation. Furthermore, unlike here, the franchise agreements in those cases did not "contain any language indicating that [the franchisees] waived any right to file suit in Minnesota." *Ramada Worldwide*, 2013 WL 5773085, at *3. See also *Allegra Holdings*, 2014 WL 1652221, at *3 ("[T]here is nothing in the contractual language limiting *Defendants*' selection of a Minnesota court as a forum *should they, as Franchisors* [sic], *choose* to file suit."). Instead, in *Ramada Worldwide*, the franchise agreement only required that the franchisee "assent to the 'non-exclusive personal jurisdiction' of certain other courts." *Ramada Worldwide*, 2013 WL 5773085, at *3. The forum-selection clauses in this case "require[] litigation to be conducted outside of Minnesota."  (Def.'s Mot., Ex. A at 47.) For that reason, they are invalid.

### C. Transferee Court

Under Section 1404(a), a district court can only transfer a case to "any other district or division where it might have been brought." 28 U.S.C. 1404(a). The parties do not dispute that this case might have been brought in the District of Connecticut. (Def.'s Mot at 9; Pl.'s Resp. at 11.) The Court agrees. Both personal jurisdiction and venue are proper in the District of Connecticut because Defendant is a Connecticut corporation.

### D. Private-Interest Factors

Having determined that twenty-four of the forty-one Plaintiffs have franchise agreements with valid forum-selection clauses, the Court will now weigh the private-interest factors as it relates to these Plaintiffs in two groups: (1) the twenty-four FSC Plaintiffs; and (2) the seventeen Non-FSC Plaintiffs (seven of which are located outside of Michigan).

First, the FSC Plaintiffs. This analysis is straightforward. Per *Atlantic Marine*, their choice of forum "merits no weight" and the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." 134 S.Ct. at 581-82.

Next, the Non-FSC Plaintiffs. These are the ten Michigan Plaintiffs, the six Minnesota Plaintiffs, and the one Indiana Plaintiff. Typically, a plaintiff's choice of forum is entitled to "substantial deference." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 750 (E.D. Mich. 2004). It is not, however, dispositive. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). And it "will not defeat a well-founded motion for change of venue." *Audi AG*, 341 F. Supp. 2d at 750. "This is especially true where a plaintiff has little or no connection to the chosen forum." *Id.* Here, the Michigan Plaintiffs are the only ones who have any connection to this state. Although their decision to file suit here is ordinally entitled to deference, this deference is lessened by the fact that the vast majority of the Plaintiffs do not have any connection to Michigan. *See Defenders of Wildlife v. Jewel*, 74 F. Supp. 3d 77, 84 (D.D.C. 2014) ("[W]hile a plaintiff bringing suit in its home forum is ordinarily entitled to deference in its choice of forum, any deference owed by the Court in this action is lessened because only one of the three plaintiffs resides in the current forum."). And for the seven out-of-state Plaintiffs who have no connection to Michigan, their decision is entitled to even less deference.

For the same reason, the locus of operative facts does not favor keeping the case in this forum. The Michigan Plaintiffs do make up the plurality of the group (though not by much), but few if any of the actions complained of occurred here. Their claims, and the claims of the other thirty-one out-of-state Plaintiffs, are based on franchise agreements and disclosure documents that were drafted in Connecticut. (Def.'s Ex. A at 13-14.) This puts

13

the locus of operative facts in that state. *See Intellectuals, PLLC v. Clorox Co.*, No. 10-12415, 2010 WL 5129014, at *3 (E.D. Mich. Dec. 10, 2010) (finding that the locus of operative facts was the place where the defendant made the critical decisions giving rise to the lawsuit); *Owner-Operator Indep. Drivers Ass'n, Inc. v. N. Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 825 (W.D. Va. 2005) (same); see also *Buchanan v. Metz*, No. 12-15511, 2013 WL 3387803, at *4 (E.D. Mich. July 8, 2013) (("Litigation should proceed in that place where the case finds its center of gravity.") (internal quotations omitted)). And although Plaintiffs speculate that some of the Defendant's decisions may have been made in Canada, that would still put the locus of operative facts outside of this forum. Either way, Michigan has little connection to the underlying issues of this case.

The convenience of the parties and the witnesses are mostly neutral but tend to favor Defendant as well. Defendant is headquartered and has its principal place of business in Connecticut. Many of the key witnesses in the case—current and former officers and employees of Defendant—are located there. (Def.'s Mot., Ex. A at 12-13.) The majority of the relevant documents at issue are likely to be located there too. (Though in the modern world, this factor carries very little weight. *Bestop, Inc. v. Tuffy Sec. Products, Inc.*, No. 13-10759, 2013 WL 4496257, at *6 (E.D. Mich. Aug. 21, 2013)). It is true that "[a] transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Audi AG*, 204 F. Supp. 2d at 1023. But Plaintiffs, specifically the Minnesota and Indiana Plaintiffs, do not persuasively explain why Michigan, a state in which they have no connection, is more convenient for them than Connecticut. On the other hand, the Michigan Plaintiffs have a stronger argument for convenience because they do have a connection to this state.

In sum, the private-interests factors conclusively favor transferring the FSC Plaintiffs. *Atlantic Marine*, 134 S.Ct. at 581-82. They also favor transferring the Non-FSC Plaintiffs given the Minnesota and Indiana Plaintiffs' lack of connection to this forum. The Michigan Plaintiffs have a stronger case for remaining in this district than the other Non-FSC Plaintiffs, but the private-interests factors still favor transferring them as well.

### E. Public-Interest Factors

The Court is faced with two competing public interests in this case. The first is that, "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Atlantic Marine*, 134 S.Ct at 583. Valid forum-selection clauses should be given "controlling weight in all but the most exceptional cases." *Id.* at 581. The second is the Court's interest in judicial economy (i.e., avoiding duplicative litigation). *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that s 1404(a) was designed to prevent."). Given the analysis of the private-interest factors, the Court finds that the best way to reconcile these interests is to transfer the entire case to the District of Connecticut. If the Court were to instead keep this case here, it would be ignoring scores of valid forum-selection clauses agreed to by twenty-four Plaintiffs. *Atlantic Marine* militates against this result. Furthermore, aside from the forum-selection clauses, the vast majority of Plaintiffs have no connection to this state and do not have a strong interest in keeping the case here. If the Court took the alternative approach and severed the FSC Plaintiffs, duplicative litigation would arise in two forums. Both parties disfavor this outcome, and the Court agrees that it would not be appropriate in this case. Severing and transferring some

15

Plaintiffs and not others would create a much greater inconvenience than transferring the case as a whole. Although the Michigan Plaintiffs have a stronger argument based on the private-interest factors for remaining in this state, the Court finds that the interests of justice outweigh these private interests. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result.").

In arguing the contrary, Plaintiffs make much of the Fifth Circuit's decision in *In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014). Although this case was helpful to the Court in analyzing the issues presented here, the Court does not find that it lends much supports to Plaintiffs' position. In that case, the plaintiff sued three defendants in Louisiana. One of the defendants had an agreement with a forum-selection clause specifying Indiana as the location of any litigation between the parties. That defendant asked the district court to sever it from the case and to transfer it to the Southern District of Indiana. (The district court could not have transferred the whole case to Indiana because Indiana did not have personal jurisdiction over one of the defendants.) The district court denied the motion. On a petition for writ of mandamus, the Fifth Circuit reversed. Although recognizing that, under *Atlantic Marine*, forum-selection clauses should ordinarily control, it found that *Atlantic Marine* did not "mandate severance and transfer of a party bearing a forum selection clause in all multiparty cases, regardless of countervailing considerations of judicial economy." 775 F.3d at 677. Instead, "the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." *Id.* at 679. Nevertheless, the court held that the defendant should have been

16

severed and transferred pursuant to its forum-selection clause and remanded the case to the district court to do so. *Id.* at 683.

Plaintiffs argue that *In re Rolls Royce* favors retaining the case in this district. The Court does not agree. First, this case presents a different issue than *In re Rolls Royce*. There, the defendant (one of three) asked that it be severed from the case and transferred individually to a different district, and the district court did not have the option to transfer the whole case. Here, the Court has the ability to transfer the entire case to the District of Connecticut. Second, although the Fifth Circuit found that *Atlantic Marine* did not mandate severance and transfer in every forum-selection clause case, it eventually found that that was the appropriate course. The costs of duplicative litigation did not outweigh the existence of a forum-selection clause. Third, the Court recognizes the strong interest—also recognized by the Fifth Circuit—of judicial economy. Nevertheless, this is not the only interest in the case, and the existence of forum-selection clauses in the agreements of more than half of the Plaintiffs must be taken into consideration. It is these dual interests, taken together, that favor transfer here.

Plaintiffs also make various arguments as it relates to states' public policies against forum-selection clauses, efficiency, and familiarity with applicable law, but the Court finds that none of these factors outweigh those discussed above. The interests of justice favor transferring this case to the District of Connecticut.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion is GRANTED. The case is TRANSFERRED to the District of Connecticut.

SO ORDERED.

17

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  September 1, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 1, 2015, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager