# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FAMILY WIRELESS #1, LLC, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 15-CV-1310 (JCH) |
| v. | : | |
| | : | |
| AUTOMOTIVE TECHNOLOGIES, INC., | : | JANUARY 12, 2016 |
| Defendant. | : | |

**RULING RE:  DEFENDANT'S PARTIAL MOTION TO DISMISS (DOC. NO. 52) AND
PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT (DOC. NO. 67)**

## I.    INTRODUCTION

Thirty-nine franchisees bring this diversity action against their mutual franchisor,

Automotive Technologies, Inc. ("ATI"), a licensee of Verizon Wireless ("Verizon").  The

plaintiffs' Amended Complaint alleges breach of contract; breach of the implied

covenant of good faith and fair dealing; fraudulent, negligent, and innocent

misrepresentation; violations of the franchise and consumer protection laws of the

states of Michigan, Connecticut, New York, Virginia, Maryland, Pennsylvania, Ohio, and

West Virginia; and unjust enrichment.  Amended Complaint ("Complaint") (Doc. No. 21).

Some claims are brought by all the plaintiffs, others by plaintiffs in certain states, and

others by a specific group of eleven plaintiffs who executed franchise agreements in

2014 (the "Eleven Plaintiffs").[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), ATI has moved to dismiss

Counts II-XIII of the Amended Complaint for failure to state with particularity, as required

under Federal Rule of Civil Procedure 9(b), the circumstances constituting fraud and for

---

[1] The Eleven Plaintiffs are JAS Technology, Inc.; Central Office Products, Inc.; LHG Stores, LLC;
Corridor Ventures, Inc.; EMG 1125 Lexington Ave., LLC; EMG Broadway, LLC; EMG St. Marks, LLC;
EMG Delancey Street, LLC; Entrepreneur Investment Corp.; Russell Wireless, LLC; and T.C. Wireless,
Inc.

failure to state claims upon which relief can be granted.  Motion to Dismiss the Amended Complaint (the "Motion") (Doc. No. 52).

For the reasons set forth below, ATI's Motion is **GRANTED IN PART** and **DENIED IN PART**, and the plaintiffs' Motion for Leave to Amend the Complaint is accordingly **DENIED AS MOOT**.

## II.   BACKGROUND

### A.   The Parties

The plaintiffs are thirty-nine commercial entities formed under the laws of, and with principal places of business in, thirteen states:  Michigan,[2] New York,[3] Florida,[4] New Jersey,[5] Pennsylvania,[6] Minnesota,[7] Virginia,[8] New Hampshire,[9] Massachusetts,[10] Ohio,[11] Indiana,[12] West Virginia,[13] and Missouri.[14]  Complaint ¶¶ 1-43.  Automotive

---

[2] Family Wireless # 1, LLC; 4 One Enterprises, LLC; Beauluken Ventures, Inc.; Empire Investment Group, LLC; Fritz & Company, LLC; Generation Wireless, LLC; Elevation Capital, Inc.; PK Roy & Associates, LLC; and T.C. Wireless, Inc.

[3] Liberty Cove, Inc.; EMG 1125 Lexington Ave., LLC; EMG Broadway, LLC; EMG St. Marks, LLC; and EMG Delancey Street, LLC.

[4] Naples Cellular, LLC.

[5] Yash Communications, LLC.

[6] Central Office Products, Inc.; JAS Technology, Inc.; Musser Wireless, Inc.; and Russell Wireless, LLC.

[7] EXRS-Wireless, Inc.; EXRS-Wireless 2, Inc.; Mandent Solutions, LLC; DC Wireless, LLC; O Cubed Wireless, LLC; and UMP Holding, LLC.

[8] Corridor Ventures, Inc.; Entrepreneur Investment Corp.; and Slap Shot, Inc.

[9] Bobevans Communications, LLC.

[10] Vatao Enterprises, LLC; Vatao Wireless, Inc.; and R & E Leung Enterprises, Inc.

[11] LHG Stores, Inc., and Ohio LGH, LLC.

[12] HSL Inc.

Technologies, Inc., their franchisor, is a Connecticut corporation.  Id. ¶ 45(a).  ATI is an agent of Verizon Wireless.  Id. ¶ 56.

Verizon is a wireless telecommunications provider that sells its products and services, in large part, through a network of retail stores.  Id. ¶ 49-50.  Though many of these retail stores are owned and operated by Verizon itself, Verizon also relies on agents to offer and sell its products and services.  Id. ¶ 51.  These agents operate under licensing agreements and are generally referred to as "Direct Agents" because they work directly for Verizon.  Id.

Some Direct Agents are permitted, through their licensing agreements, to contract with other individuals and commercial entities to act as sub-agents of Verizon.  Id. ¶ 52.  These Direct Agents are known as "Master Agents."  Id.  The subagents that contract with the Master Agents do not work directly for Verizon, but they generally operate stores that sell Verizon products and services in much the same manner as Direct Agents.  Id.

ATI is a Master Agent of Verizon.  Id. ¶ 56.  Rather than create subagents by new licensing agreements, ATI elected to create a franchise called Wireless Zone ® ("Wireless Zone").  Id. ¶ 57.  ATI has sold the rights to operate Wireless Zone stores to each of the thirty-nine plaintiffs in this case, all of whom operate as franchisees of ATI.  Id. ¶ 57-58.

The crux of the Complaint turns on two different facets of the relationships between the plaintiffs and ATI:  the terms of the Franchise Agreements and the

---

[13] B B & T Communications, Inc., and West Virginia LHG, LLC.

[14] McQuinn & Taylor Communications, LLC.

Franchise Disclosure Document ("FDD") that ATI is required by law to provide to its

franchisees.  See 16 C.F.R. 436.1 et seq.

      B.      The Franchise Agreements and the Franchise Disclosure Document

As subagents of Verizon, the plaintiffs are not paid directly by Verizon for the sale

of Verizon's products and services, but rather receive their payments, in the form of

"Commissions," from ATI, who receive the Commission from Verizon.  Id. ¶ 63-64.

Though the language of the Franchise Agreements has varied over the years at issue –

2008 to 2015 – the relevant section has, in substance, stayed the same.  Id. ¶ 64.

Section 6.02 of the 2008 Agreement reads as follows:

> Typically under ATI's Provider Contract for your geograph-
> ical area, certain customer payments are forward to [Veri-
> zon] and not retained by you or ATI.  [Verizon] then pays ATI
> commissions ("Commissions") on these customer payments
> attributable to your Store, which ATI passes along to you as
> ATI's subagent, minus deductions for amounts you owe ATI.
> . . . ATI will deduct from the [Verizon] Commissions ATI
> transmits to you, as Continuing Royalties payable by you to
> ATI:  (i) ten percent (10%) of Commissions ATI receives
> from [Verizon] attributable to your customer activations,
> sales and services; plus (ii) ten percent (10%) of amounts
> you receive attributable to customer payments you retain for
> sales of other products and services; plus (iii) twenty percent
> (20%) of residual customer use Commissions ATI receives
> from [Verizon] attributable to your Store.[15]

Complaint, Exhibit 1 (Doc. No. 21-1) at 1.  The Franchise Agreements do not define

"Commission."  Complaint ¶ 68.

The Federal Trade Commission's regulations require franchisors to provide to

prospective franchisees an up-to-date Franchise Disclosure Document.  C.F.R. § 436.2.

---

[15] From 2009 through 2015, subsection (i) was changed to read "(i) ten percent (10%) of Commission ATI receives from [Verizon] attributable to your customer activations, upgrades, enhanced services, and other products or services," and subsection (ii) was omitted.  Complaint, Exhibit 1 (Doc. No. 21-1) at 3, 5, 8, 11, 14, 17, 19.

4

Included among the information required to be "disclosed" in the FDD is a description of "all other fees that the franchisee must pay to the franchisor or its affiliates . . . for example, royalties[,]" in addition to  "remarks, definitions, or caveats that elaborate on" the information provided.  C.F.R. § 436.5(f), (f)(1) and (f)(4).  "Disclosed" is defined, for purposes of the regulations, as meaning "to present all material facts accurately, clearly, concisely, and legibly in plain English."  C.F.R. § 436.1(d).

In its 2014 FDD, issued to the Eleven Plaintiffs before they opened new franchise stores or renewed existing franchise agreements, Complaint ¶¶ 119-127, ATI explained Section 6.02 of the Franchise Agreements as follows:

> Under our current [Contracts with Verizon], we receive commissions for certain of the products and services you sell, and we collect Continuing Royalties from you under the Commission Basis.  If the commission formula in one or more of the [Verizon] Contracts changes to our detriment, we reserve the right to charge Continuing Royalties under the Gross Sales Basis, whichever is higher.

Complaint, Exhibit 2 (Doc. No. 21-2) at 29.  The FDD goes no further in explaining ATI's rights to royalties, how Commissions are to be defined, or how ATI's rights to royalties might change.

C.    Shift from the Contract Model to the Edge Program

With the preceding description of the parties and their commercial relationships as a backdrop, the events giving rise to the instant litigation are alleged to have unfolded as follows.  Before April 2014, sales of Verizon devices were made under what was known as the "Contract Model."  Complaint ¶ 77.  Under the Contract Model, the seller – in this case, each of the plaintiffs – would incentivize the sale of a Verizon service plan by offering the device itself (a cellphone or tablet, for example) at a

5

discounted price.  Id. ¶ 78.  The sale of the device would often come at a loss to the seller, because the sales price would fall below the seller's cost of purchasing the device.  Id.  In return, for certain devices, Verizon would provide "an additional commission," over and above the commission provided to the seller for having sold the service plan to the customer, "to account for the agent's loss in selling the device below cost."  Id.

In April 2014, Verizon launched the "Edge Program" with ATI, as a replacement to the Contract model.  Id. ¶ 79.  Under the Edge Program, customers do not receive a discounted device and a two-year service contract with Verizon.  Id.  Rather, they receive a month-to-month service plan, and purchase the device at full price, usually through a monthly installment agreement with the seller, which is automatically assigned to Verizon.  Id.  A customer may make a down payment on the device, payable to the seller.  Id.  The customer typically pays each installment on the device on the same bill as she pays Verizon for the service plan.  Id.

Under the Edge Program, sellers do not sell the devices at a loss, because the customer must pay the entire price of the device.  Id. ¶ 80.  However, where the customer decides to pay in installments, and the installment contract is assigned to Verizon, Verizon reimburses the retail cost of the device to the seller that made the sale, less any down payment the customer may initially have made to the seller.  Id.  The plaintiffs refer to this payment as the "Installment Offset."  Under the Edge Program, the seller receives two payments from Verizon:  a commission on the sale of the service contract, as before under the Contract Model, as well as a payment covering the retail

cost of the device where the customer elected to buy the phone on installments rather than entirely up front.  Id. ¶

From April 2014 until January 2015, ATI collected a 10% royalty, pursuant to Section 6.02 of the Franchise Agreements, on the commissions received under the Edge Program for the sale of service contracts.  Id. ¶ 82.  ATI did not, however, withhold any royalty on the Installment Offset.  Id.  Nor did ATI indicate to the plaintiffs that it ever intended to do so, or that it considered itself to have the right to do so.  Id. ¶ 82-83.  In fact, the information ATI issued to the plaintiffs concerning the Edge Program characterized the Installment Offset as a "reimbursement" for the equipment sold, not as a "commission."  Id. ¶ 84.

On December 30, 2014, ATI announced that it intended to withhold a 10% royalty on Installment Offsets, beginning January 1, 2015.  Id. ¶ 86.  Two days later, it commenced withholdings.  Id. ¶ 87.  ATI has maintained that it considers itself entitled to a royalty on the Installment Offsets, asserting that "[the p]laintiffs have a mistaken opinion regarding the meaning of the royalty provision in their franchise agreements." Defendant's Memorandum in Support of its Motion to Dismiss ("Memorandum in Support") (Doc. No. 52-1) at 3.

When the Edge Program was introduced, ATI did not update its 2014 FDD, which was based on the Contract Model.  Id. ¶ 101, 103.  Neither did ATI alert the plaintiffs to any material change as to how ATI would interpret or implement the term "Commission" as described in the FDD and the Franchise Agreements.  Id. ¶ 105.

D.    The Pass-through of Spiffs

In addition to service plan Commissions and Installment Offsets, Verizon has, from time to time, issued additional bonus Commissions to the plaintiffs.  Id. ¶ 69. These Commissions were paid for the sale of specific plans or products, or for meeting key performance indicators.  Id.  In the wireless communication industry, such Commissions are known as "spiffs."  Id.

As with the other forms of payment at issue in this case, spiffs were paid to ATI, who would then pass the spiff through to the franchisee that had earned it, less a 10% royalty.  Id. ¶ 71, 75.  Before 2012, spiffs were paid without issue, but after ATI's sale to Glentel USA, Inc., in December 2012, all spiff payments to the plaintiffs have stopped. Id. 75-76.

E.    Procedural History

On March 30, 2015, the plaintiffs filed their first Complaint in the United States District Court for the Eastern District of Michigan.  Complaint (Doc. No. 1).  ATI moved to transfer the case and to dismiss the first Complaint on June 5, 2015.  Motions to Dismiss and to Transfer (Doc. Nos. 10 and 11).  The plaintiffs opposed the Motion to Transfer and mooted the Motion to Dismiss by filing their Amended Complaint. Response to Motion to Transfer and Amended Complaint (Doc. Nos. 18 and 21).  The court granted ATI's Motion to Transfer, see Opinion and Order (Doc. No. 29), and the case was then transferred to this court on September 1, 2015.

F.    The Claims

The First Count of the Complaint alleges that, because the Franchise Agreements do not consider the Installment Offset to be a "Commission," ATI has

breached the Agreements by treating it as such.  ATI has not moved to dismiss this Count.

The balance of the Complaint concerns, first, ATI's failure to represent, to different sets of plaintiffs, that they had "studied the issue of its ability to charge a royalty on the Installment Offsets for months and determined that it could charge a royalty on such amounts." Id. ¶ 119.  ATI's failure to advise the Eleven Plaintiffs of their intent to withhold such royalties, the plaintiffs allege, constituted a misrepresentation amounting to fraud, negligent misrepresentation, innocent misrepresentation, and violations of the franchise and consumer protection laws of Michigan, Connecticut, New York, Virginia, Maryland, Pennsylvania, Ohio, and West Virginia. Id. 118-241 (Counts II-XII).   The final Count of the Complaint, Count XIII, alleges unjust enrichment, on the basis of ATI's withholding of spiffs to which the plaintiffs allege they are entitled. Id. 242-46.  ATI has moved to dismiss the counts alleging misrepresentations, violations of state franchise and consumer protection laws, and unjust enrichment (Counts II-XIII).  Motion to Dismiss at 1-2.

## III.    STANDARD OF REVIEW

In adjudicating a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b), the court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in the plaintiff's favor. Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (Rule 12(b)(6)); Stevelman v. Alias Research, Inc., 174 F.3d 79, 83 (2d Cir. 1999) (Rule 9(b)).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.

See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)).  The court takes the factual allegations of the complaint to be true, Hemi Grp., LLC v. City of New York, 559 U.S. 1, 5 (2010), and draws all reasonable inferences in plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

Complaints alleging fraud must meet higher pleading requires than an ordinary complaint, however.  Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

The Second Circuit has explained that the Rule requires that the plaintiff "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 128, 187 (2d Cir. 2004) (internal quotation marks and citations omitted). Though scienter may be pleaded "generally," "this leeway is not a license to base claims of fraud on speculation and conclusory allegations." Id. (internal quotation marks and citations omitted); see also Iqbal, 556 U.S. at 678.

## IV.   DISCUSSION

As a preliminary matter, the plaintiffs do not oppose ATI's Motion as to Counts V, VIII, X, XI, and XII of the Complaint.[16]  Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Opposition") (Doc. No. 60) at 6.  For the various reasons set forth in ATI's Motion,[17] and impliedly accepted by the plaintiffs in their Opposition, ATI's Motion to Dismiss is granted as to these Counts.  See, e.g., Schwapp v. Town of Avon, 118 F.3d 106, 112 (2d Cir. 1997) (courts are to "consider abandoned any claims not adequately presented in [a party's] brief").

Further, the plaintiffs concede that their remaining misrepresentation claims can only be maintained as to the Eleven Plaintiffs, all of whom are alleged to have

---

[16] These Counts of the Complaint alleged violations, respectively, of the Michigan Franchise Investment Law, Mich. Comp. Laws § 445.1505; the Virginia Retail Franchise Act, Va. Code § 12.1-563; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 et seq.; the Ohio Business opportunity Plans Act, Ohio Rev. Code § 1334.03; and the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101.

[17] Specifically, ATI points out that the Michigan Franchise Investment Law does not apply to renewals of franchise contracts, as is alleged in the Complaint; that the Virginia Retail Franchise Act does not contain a private right of action; that the Pennsylvania Unfair Trade Practices and Consumer Protection Law and the West Virginia Consumer Credit and Protection Act do not apply to the sale of franchises, but only to the sale of goods or services; and that the Ohio Business Opportunity Plans Act does not apply to franchisors, such as ATI, whose net worth exceeds $15 million dollars.  See Memorandum in Support of Motion to Dismiss (Doc. No. 52-1) at 16-21.

contracted with ATI in reliance on the 2014 FDD.  See Opposition at 6-7.

Consequently, ATI's Motion to Dismiss is granted as to Counts VI and VII with respect

to those plaintiffs that are not the Eleven Plaintiffs.[18]

Though ATI has moved to dismiss Count IX, alleging a violation of the Maryland

Franchise Investment Law ("MFIL"), its Memorandum in Support omits any argument as

to this statute other than its general allegation that the Complaint fails to comply with

Rule 9(b).  However, the court finds that the Complaint is insufficient as to Count IX for

another reason entirely:  the Complaint fails to allege facts necessary to state a claim

under the MFIL.  Specifically, the MFIL applies when two conditions are met:  first, that

"the franchisee must pay a franchise fee more than $100," and, second, that "the

offeree or franchisee is a resident of the state; the franchised business will be or is

operated in the State; the offer to sell is made in the State; or the offer to buy is

accepted in the State."  Md. Code § 14-203.  The Complaint fails to allege facts

sufficient to meet either prerequisite.  LGH Stores, LLC, the only store mentioned in this

Count of the Complaint, see Complaint ¶ 203, is alleged to be an Ohio limited liability

company, see id ¶ 29, and there is no specific allegation that LGH Stores, LLC, paid a

---

[18] The practical effect of this determination is (1) to dismiss as to Count VI (alleging a violation of the Connecticut Unfair Trade Practice Act, Conn. Gen. Stat. 42-110b et seq.) plaintiffs Family Wireless # 1, LLC; 4 One Enterprises, LLC; Beauluken Ventures, Inc.; Empire Investment Group, LLC; Fritz & Company, LLC; Generation Wireless, LLC; Elevation Capital, Inc.; PK Roy & Associates, LLC; Liberty Cove, Inc.; LLC; Naples Cellular, LLC.; Yash Communications, LLC.; Musser Wireless, Inc.; EXRS-Wireless, Inc.; EXRS-Wireless 2, Inc.; Mandent Solutions, LLC; DC Wireless, LLC; O Cubed Wireless, LLC; UMP Holding, LLC.; Slap Shot, Inc.; Bobevans Communications, LLC.; Vatao Enterprises, LLC; Vatao Wireless, Inc.; R & E Leung Enterprises, Inc.; Ohio LGH, LLC.; HSL Inc.; B B & T Communications, Inc., West Virginia LHG, LLC.; and McQuinn & Taylor Communications, LLC.; and to retain plaintiffs JAS Technology, Inc.; Central Office Products, Inc.; LHG Stores, Inc.; Corridor Ventures, Inc.; EMG 1125 Lexington Ave., LLC; EMG Broadway, LLC; EMG St. Marks, LLC; EMG Delancey Street, LLC; Entrepreneur Investment Corp.; Russell Wireless, LLC; and T.C. Wireless, Inc. (the Eleven Plaintiffs), and (2) to dismiss from Count VII (alleging a violation of the New York Franchise Act, N.Y. Gen. Bus. Law § 680 et seq.) plaintiff Liberty Cove, Inc.; and to retain plaintiffs EMG 1125 Lexington Ave., LLC; EMG Broadway, LLC; EMG St. Marks, LLC; and EMG Delancey Street, LLC.

fee or even operate a store in Maryland.  See A Love of Food, LLC v. Maoz Vegetarian USA, Inc., 70 F. Supp. 3d 376, 392 (D.D.C. 2014) (discussing the statutory prerequisites for the MFIL).  Consequently, ATI's Motion to Dismiss is granted as to Count IX, without prejudice to replead with sufficient factual matter to meet the statutory prerequisites in the MFIL.

The remainder of the Ruling will proceed as follows.  It will first address the sufficiency of the Complaint under Rule 9(b) as to those claims sounding in fraud (Counts II (fraudulent misrepresentation) and VII (violation of the New York Franchise Act)).  The Ruling will then turn to the common law claims raised in the Complaint. First, the court must determine which law or laws control these claims, because the Eleven Plaintiffs are from five different states, and the entire group of plaintiffs – all of whom raise unjust enrichment claims – come from thirteen.  Finally, the court will determine whether the Eleven Plaintiffs' claims that do not sound in fraud (Counts III, IV, and VI) are barred by the Economic Loss Doctrine, and whether the unjust enrichment claims raised by all the plaintiffs (Count XIII) are barred by the parties' franchise contracts.

    A.    Adequacy of the Complaint as to Count II, VI, and VII under Rule 9(b)

The Eleven Plaintiffs' central grievance is that ATI omitted to inform them, in the Franchise Disclosure Document provided to them before executing renewal agreements and new franchise agreements, that it believed itself entitled to withhold a 10% royalty on Installment Offsets.  Complaint ¶ 122-135.  They have alleged that, at the time this information was omitted from the FDD, ATI knew that it intended to withhold such a royalty.  Id. ¶ 137.  They have also alleged that ATI's "course of dealing and actions,

including its written communications . . . clearly created the impression that it could not and would not charge a royalty on the Installment Offset." Id. ¶ 120.

As discussed above, Rule 9(b) requires that a plaintiff alleging a cause of action sounding in fraud "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent." Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC, 797 F.3d 160, 170 (2d Cir. 2015) (internal quotation marks and citations omitted).  ATI contends that the Eleven Plaintiffs have failed to meet satisfy Rule 9(b) because the claims "lump [ the individual plaintiffs] together," with the result that ATI cannot identify how it could have defrauded each one under their individual circumstances. Memorandum in Support at 8.  At the heart of this assertion is that the Eleven Plaintiffs have not stated when each misrepresentation was made, or which FDDs they relied on and that they contend were fraudulent.  Id. at 8-9.  Finally, ATI asserts that the Eleven Plaintiffs' claims should fail under Rule 9(b) because they do not specify which statement in the FDD was false.  Id. at 9.

The Eleven Plaintiffs counter that each plaintiff essentially relied on the same FDDs, that the content of the FDDs that were distributed to each plaintiff are peculiarly within ATI's knowledge, and that they have not pointed to a direct misrepresentation in the FDDs because no such express misrepresentation exists – rather, they have asserted that the FDD fraudulently omitted a material fact.  Opposition at 7-14.

Though the court is particularly skeptical of ATI's assertion that it has not been put adequately on notice of which FDD is alleged to be fraudulent, see Memorandum in

Support at 9-10,[19] its Motion to Dismiss as to Count II is granted without prejudice.

First, though it is true that each plaintiff shares a common grievance, they nevertheless all signed contracts at different times, and may have relied on different FDDs, each of which may have had different language.  It follows that the Eleven Plaintiffs have a burden under Rule 9(b) precisely to articulate which FDD they relied upon for which Contract, and when each FDD was furnished and relied upon.  Second, ATI is correct to note in its Reply in Support of Motion to Dismiss ("Reply in Support") (Doc. No. 65) that the Eleven Plaintiffs have alleged more than just omissions in the FDD.  See Reply in Support at 2 (quoting from Complaint at ¶¶ 84; 100; 120; 137; 138; 169; 173; and 197).[20]  The passages from the Complaint upon which ATI relies in its Reply in Support are, in fact, insufficiently specific and fall short of meeting 9(b)'s requirement for detailed descriptions of the "what, where, when, and how."  See Loreley Financing, 797 F.3d at 170.[21]  Consequently, Count II of the Complaint is dismissed without prejudice to replead with sufficient factual allegations to comply with Rule 9(b).[22]

---

[19] See Declaration of Robert G. Huelin, Memorandum in Support, Exhibit A (Doc. No. 52-2) at 1 ("As part of my responsibilities as Vice President, Legal and Compliance, I oversee ATI's contract management and franchise relationships, and I am ATI's Secretary.  In this capacity for ATI, I and other ATI personnel have knowledge of the contracts governing each franchise at issue and of the versions of the Franchise Disclosure Document ("FDD") that ATI has used at various times.").

[20] The Eleven Plaintiffs oppose the Motion in part by claiming that their claims concern omissions only.  Opposition at 8.  If this is the case, they can amend their Complaint by removing the claims of affirmative representations, discussed above, which require greater specificity.

[21] ATI's argument, on the other hand, that the Eleven Plaintiffs have failed even to allege an omission in compliance with 9(b) is without merit.  ATI claims that the Eleven Plaintiffs' allegation that the 2014 FDD contained omissions "does not identify what specific statements contained the alleged omission."  Reply in Support at 3.  To the contrary, the Complaint clearly states which portions of the FDD were required to contain the information allegedly omitted.  Complaint ¶ 91.

[22] The court agrees with the Eleven Plaintiffs, see Opposition at 15), that they need not identify a person who provided the FDD: ATI provided it.  If the Eleven Plaintiffs allege no affirmative misrepresentations, it should suffice to allege the date an FDD was provided and the date on which the relevant franchise agreement was entered into in reliance on that FDD.

ATI has also moved to dismiss Count VII, alleging a violation of the New York Franchise Act, N.Y. Gen. Bus. Law § 680 et seq., on the ground that the Complaint failed to comply with Rule 9(b).  It has not been squarely decided by the Second Circuit, however, that the Franchise Act – and particularly those provisions under which the Eleven Plaintiffs have sued – actually requires compliance with the Rule.  See generally Schwartzco Enterprises LLC v. TMH Management, LLC, 60 F. Supp. 3d 331, 357 (S.D.N.Y. 2014) ("Curiously . . . the Court has uncovered no case law directly addressing whether claims brought under [the Franchise Act] must comply with the heightened pleading standards of [Rule] 9(b).").  The court concludes, however, that the relevant portion of the Act at issue does require compliance with Rule 9(b), and second, that ATI's motion should be granted without prejudice to replead.

Section 687 of the Act provides in pertinent part, under the title "Fraudulent and unlawful practices:"

> It is unlawful for a person, in connection with the offer, sale, or purchase of any franchise, to directly or indirectly:  (a) [e]mploy any device, scheme, or artifice to defraud[; or] (b) [m]ake any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

The portion of the Complaint alleging a violation of this provision relies expressly on ATI's alleged omission of material fact – not on the unattributed "representations" that serve as a partial basis of Count II.  However, Section 687 prohibits "fraudulent" conduct, and a claim thereunder sounds in fraud.[23]  It is therefore necessary for the

---

[23] The court in Schwartzco noted that a natural solution to the problem of whether Rule 9(b) applied to the Franchise Act was to conclude, "of course . . . that Rule 9(b) applies to claims brought under certain sections of the [Franchise Act], namely the anti-fraud provisions, and not to others, namely

Eleven Plaintiffs to comply with Rule 9(b) by stating clearly which FDDs were provided to each of them, and when they were provided in relation to the execution of the franchise agreements allegedly in reliance on the fraudulent FDDs.  For this reason, ATI's Motion is granted without prejudice to replead as to Count VII.

ATI's Motion also sought to dismiss, for failure to comply with Rule 9(b), the Eleven Plaintiffs' claims under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b et seq.  The factual basis of these claims is the same as those supporting Counts II and III.  Compliance with Rule 9(b) is unnecessary, however, to state a claim under CUTPA, because fraud is not a necessary element of a CUTPA claim.  See Bruce v. Home Depot, U.S.A., 308 F. Supp. 2d 72, 77 (D. Conn. 2004) (stating that 9(b) compliance not necessary to state a CUTPA claim and collecting cases) (citing Miller v. Appleby, 183 Conn. 51, 54-55 (1981)).  For these reasons, ATI's Motion is denied as to Count VI as to the Eleven Plaintiffs.

B.    Choice of Law

ATI has sought dismissal of the remainder of the claims in the Complaint under Rule 12(b)(6) on the ground that the Complaint fails to state claims upon which relief can be granted.  The threshold issue to be decided, before assessing the sufficiency of the plaintiffs' pleadings as to the remaining Counts of the Complaint, is under what law or laws the plaintiffs' claims arise.  However, the parties have no more than alluded to what law the court should apply to the plaintiffs' Complaint.  See, e.g., Memorandum in Support at 13 n.9; Opposition at 19 n.3; Reply in Support at 7 n.5.

---

the disclosure provisions.  Stated otherwise, the question of the application of Rule 9(b) to the [Franchise Act] is likely not an 'all or nothing' answer."  Schwartzco, 60 F. Supp. 3d at 357.

A federal court sitting in diversity jurisdiction applies the substantive law of the forum state, including its choice of law rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).  For tort claims such as the misrepresentation and unjust enrichment claims raised by the plaintiffs here, the law of Connecticut applies the doctrine of lex loci – the law of the place of the injury – unless such law's application would "produce an arbitrary, irrational result," in which case principles set forth in the Restatement Second of the Conflict of Laws apply.  O'Connor v. O'Connor, 201 Conn. 632, 649 (1986); see also Dugan v. Mobile Med. Testing Servs., Inc., 265 Conn. 791, 800-01 (2003) (affirming O'Connor's holding that lex loci controls unless it has an arbitrary result, in which case the "substantial relationship" test of the Restatement Second of the Conflict of Laws controls).

The Eleven Plaintiffs are commercial citizens of five different states: Pennsylvania,[24] Ohio,[25] New York,[26] Virginia,[27] and Michigan.[28]  The elements of the various tort causes of action raised in the Complaint are largely the same in each of these jurisdictions.[29]  However, as the following discussion will reveal, the Economic

---

[24] JAS Technology, Inc.; Central Office Products, Inc.; and Russell Wireless, LLC.

[25] LGH Stores, LLC.

[26] EMG 1125 Lexington Ave., LLC; EMG Broadway, LLC; EMG St. Marks, LLC; and EMG Delancey Street, LLC.

[27] Corridor Ventures, Inc. and Entrepreneur Investment Corp.

[28] T.C. Wireless, Inc.

[29] For Pennsylvania, see Bilt-Rite Contractors, Inc. v. The Architectural Studio, 581 Pa. 454, 466 (2005) (negligent misrepresentation); Highmont Music Corp. v. J.M. Hoffman, Co., 397 Pa. 345, 350 (1959) (innocent misrepresentation).  For Ohio, see Delman v. City of Cleveland Heights, 41 Ohio St. 3d 1, 4 (1989) (negligent misrepresentation); Ott v. Midland-Ross Corp., 600 F.2d 24, 31-32 (6th Cir. 1979) (innocent misrepresentation).  For New York, see Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 180 (2011) (negligent misrepresentation); West Side Fed. Sav. & Loan of New York City v. Hirschfeld,

Loss Doctrine and the related "gist of the action" doctrine in Pennsylvania – both of which prohibit certain of these claims under some circumstances – result in different outcomes as to each plaintiff.  There can be no doubt that the alleged injuries – with respect to the misrepresentation claims, the induction to enter into a contract based on false information – occurred in each of the plaintiffs' states.  Application of the laws of these states does not result in an arbitrary or irrational outcome; rather, it simply has the consequence of dismissing some of the claims, but not others.  Therefore, the court will apply, for purposes of the adjudication of the instant Motion, the laws of each of the Eleven Plaintiffs.

C.      Application of the Economic Loss Doctrine

ATI's central contention with regard to Counts III and IV, which allege negligent and innocent misrepresentation respectively, is that these claims are barred by the "economic loss doctrine" ("ELD"), or related doctrines, under the laws of each of the Eleven Plaintiffs' states.  Because the court is persuaded that the laws of Pennsylvania and Michigan bar these claims, but that the laws of New York, Virginia, and Ohio permit them, ATI's Motion to Dismiss as to these Counts is granted in part and denied in part.

Regardless of jurisdiction, the ELD serves a single purpose:  it polices the boundary separating the law of tort and the law of contract.  Tort law provides redress

---

101 A.D.2d 380, 385 (N.Y. App. Div. 1984) (innocent misrepresentation).  For Virginia, see Mortarino v. Consultant Engineering Services, Inc., 251 Va. 289, 295 (1996) (constructive fraud, which encompasses both negligent and innocent misrepresentations).  For Michigan, see Law Offices of Lawrence J. Stockler, P.C. v. Rose, 174 Mich. App. 14, 33 (Mich. Ct. App. 1989) (negligent misrepresentation); U.S. Fidelity and Guaranty Co. v. Black, 412 Mich. 99, 116 (1981) (innocent misrepresentation).  The only notable difference the court can discern is that, in Virginia, it is necessary to prove the defendant's intent to cause the plaintiff to rely on the misrepresentation, whether negligently or innocently made; whereas in Michigan, no such proof is required.  Compare Mortarino, 251 Va. at 295, with Black, 412 Mich. at 116.  However, ATI has not rested its argument on this difference, nor has it made any suggestion that the Eleven Plaintiffs have failed adequately to plead the elements of these causes of action; rather, they claim that the economic loss doctrine bars the claims.

for the violation of socially-, or statutorily-, imposed duties, while contract remedies provide redress for the violation of duties created by agreement between two or more parties to a contract.  See, e.g., Abi-Najm v. Concord Condominium, LLC, 280 Va. 350, 360 (2010).  It is important to ensure that these spheres of liability remain distinct in order to maintain the integrity of contract law:  should a party displeased with the performance of a contract be able to obtain additional damages beyond those expressly envisioned by the terms of the agreement she validly entered, it would defeat the predictability that is one of the central advantages of contracts.

Where jurisdictions differ is where they have chosen to draw the boundary between the two territories of tort and contract.  These differences are reflected in each jurisdiction's willingness to look to additional sources of duties beyond those agreed upon in the terms of an existing contract.  Some, such as New York, Ohio, and Virginia, have set the boundary to permit more latitude for tort claims.  They do this by finding that remedies for breaches of duties that pre-existed a contract – such as duties to comply with certain state statutes, or duties to disclose – are not preempted by the existence of a subsequent contract.  See, e.g., Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 390 (1987); Corporex Dev. & Constr. Mgmt. v. Shook, Inc., 106 Ohio St. 3d 412, 415 (2005); and Abi-Najm, 280 Va. at 362-63.  Other jurisdictions, on the other hand, have set the boundary more in favor of contract law, finding, in effect, that the existence of a contract will almost always preclude recovery on a tort theory at all related to the contract.  See, e.g., Bishop v. GNC Franchising LLC, 403 F. Supp. 2d 411 (W. D. Pa. 2005); Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc., 209 Mich. App. 365, 373 (Mich. Ct. App. 1995).

The Eleven Plaintiffs have relied almost entirely on the law of the state of Connecticut to support their claim that their innocent and negligent misrepresentation claims are not defeated by the ELD and its doctrinal cousins.  See Opposition at 18-21 (citing Ulbrich v. Groth, 310 Conn. 375, 406 (2013)).  They then gloss over the differences between the ELD doctrines of each of the states governing their claims.  Opposition at 21-24.  ATI also has either minimized the laws more favorable to the Eleven Plaintiffs' claims, exaggerated the law that appears least favorable, or cited to entirely non-binding authority.  See, e.g., Reply in Support at 9 (citing Sherman v. PremierGarage Sys., LLC, No. CV 10-269 (MHM), 2010 WL 2023320, at *4 (D. Ariz. July 30, 2010) (applying the law of Arizona)).  Contrary to the parties' approach to the ELD, the court must take an inventory of the contours of the ELD in each of the jurisdictions that control the claims.

In Pennsylvania, the "gist of the action doctrine," a doctrine related to the ELD, precludes from being raised – independent of an existing contract claim – those tort claims, including fraudulent inducement claims such as those in the instant case, that are "inextricably intertwined with the contract claims."  Bishop, 403 F. Supp. 2d at 417 (quoting eToll, inc. v. Elias/Savion Advertising, Inc., 2002 PA Super 347 at *21 (Pa. Super. Ct. 2002)).  Though eToll concerned fraud over the course of contract performance, and not fraud prior to the execution of a contract, the Third Circuit has held that the eToll principal applies under the latter circumstance.  See Williams v. Hilton Group PLC, 93 Fed App'x 384, 385 (3d Cir. 2004); see also Bishop, 403 F. Supp. 2d at 417 ("Torts arising from the inducement to enter into contract are within the scope of the 'gist of the action' doctrine.").  The misrepresentation alleged in this case is one

that the Eleven Plaintiffs claim induced them to enter into the contract.  It falls within the gist of the action doctrine and cannot be raised in tandem with a breach of contract action under the cases cited above.[30]

The ELD is interpreted by Michigan courts as precluding recovery for misrepresentations that breach duties extraneous to the contract where the "misrepresentations relate to the breaching party's performance under the contract." Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc., 209 Mich. App. 365, 373 (Mich. Ct. App. 1995).  Here, the misrepresentation alleged to have been relied upon relates to ATI's performance.  Specifically, ATI is alleged to have misrepresented by omission regarding on what payments it considered itself entitled to royalties.  This alleged omission concerns ATI's performance under the contract.  The negligent and innocent misrepresentation claims raised by those of the Eleven Plaintiffs that reside in Michigan are consequently barred.[31]

The New York, Ohio, and Virginia plaintiffs, on the other hand, are not dismissed because all that is required to avoid the ELD in these jurisdictions is a legal duty independent of the contract.  The court's reading of Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 390 (1987), is that a preexisting, noncontractual, legal duty, which could include its disclosure obligations under the FTC's regulations, must exist. See, e.g., Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 552 (1992) (finding that the

---

[30] The effect of this part of the Ruling is to dismiss from the case JAS Technology, Inc.; Central Office Products, Inc.; and Russell Wireless, LLC.  For reasons entirely unstated in ATI's Motion, ATI has requested that the negligent and innocent misrepresentation claims raised specifically by JAS Technology, Inc., not be dismissed.  See Motion at 1; Memorandum in Support at 12,15. The court cannot discern, and the parties have not explained, why JAS Technologies, Inc., is at all distinguishable from the other Pennsylvania plaintiffs, and accordingly dismisses Counts II and III as to this party.

[31] The effect of this part of the Ruling is to dismiss Counts II and III as to T.C. Wireless, Inc.

defendant's obligations under New York regulations was a duty, independent of the contract, that permitted recovery under a tort theory).  The Ohio and Virginia plaintiffs also survive for the same reasons.  See Corporex Dev. & Constr. Mgmt. v. Shook, Inc., 106 Ohio St. 3d 412, 415 (acknowledging exception to the ELD where defendant had a "preexisting legal duty in tort," such as not to make misrepresentations); Abi-Najm v. Concord Condos., 280 Va. 350, 360-61 (2010) (finding that "[a]n action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them," and such an action may lie for a breach of duty that preexisted the contract) (quoting Boykin v. Hermitage Realty, 234 Va. 26, 29 (1987)).

The New York, Ohio, and Virginia plaintiffs have claimed that ATI furnished them with FDDs, with the expectation that these plaintiffs would rely upon the FDDs in deciding whether to enter into a franchise agreement, and that the FDDs omitted a material fact that ATI knew was false, should have known was false, or simply did not know was false at the time.  ATI had a legally imposed duty to furnish complete and accurate FDDs, and to update their FDD with any material changes.  See 16 C.F.R. § 436.2.  This is a duty that preexisted formation of the Contracts and was extraneous to the Contracts.  The nature of the misrepresentation is such that the ELD bars the Pennsylvania and Michigan plaintiffs from raising allegations of negligent or innocent misrepresentation, and as to their claims ATI's Motion is granted.  However, the ELD does not prohibit the New York, Ohio, and Virginia plaintiffs from raising them, and as to those claims, ATI's Motion is denied.

D.   <u>Unjust Enrichment</u>

All 43 plaintiffs have alleged that ATI wrongfully withheld "spiffs" – special payments made by Verizon to reward the plaintiffs' completion of certain sale goals – from them, resulting in ATI's unjust enrichment.  Complaint ¶¶ 242-46.  ATI contends that, because a Contract exists and the plaintiffs have alleged that the Contract entitled them to the spiffs, <u>see</u> Complaint at 74, the unjust enrichment claim must be barred.  Memorandum in Support at 21-22; Reply in Support at 5-7.  The plaintiffs respond that unjust enrichment claims may be raised in the alternative in the event that a finding is made, at some later stage in the proceeding, that either the contract at issue is unenforceable or that the contract at issue did not cover the subject matter of the alleged unjust enrichment.  Opposition at 24-26; 26 n.4 (collecting cases from the plaintiffs' jurisdictions).

ATI's central proposition is that unjust enrichment may only be pleaded in the alternative in cases in which the enforceability of the contract is in dispute.  <u>See</u> Reply in Support at 6 (citing <u>Lieberman v. Emigrant Mortg. Co.</u>, 436 F. Supp. 2d 357, 366 (D. Conn. 2006) (permitting unjust enrichment claim to go forward where enforceability of the contract was at issue)).  However, ATI is mistaken:  this is not the sole basis upon which unjust enrichment may be pleaded in the alternative.  The plaintiffs cite to cases from no fewer than fourteen different jurisdictions, of which twelve are among the fourteen states of the plaintiffs' origins, all of which stand for the proposition that a contract claim and an unjust enrichment claim may be pleaded in the alternative where the parties dispute whether the contract covered the subject matter of the unjust

24

enrichment claim.[32]  Opposition at 26 n.4.  That the parties are in dispute over whether the Contract at issue in this case contemplated the payment of spiffs is, in fact, directly alleged in the Complaint.  Complaint ¶ 73 ("Upon information and belief, [ATI] believes that the franchise agreements do not apply to the spiff payments made by Verizon[.]").

ATI has not disputed this allegation.  Rather, ATI, somewhat misleadingly, observes that it "does not dispute the validity or enforceability of each franchise agreement between it and [the plaintiffs]."  Reply in Support at 7.  This is not the issue.  The issue, rather, is whether ATI disputes that the Contract encompassed spiff distribution.  Plaintiffs have pleaded that, though they believe the Contract entitles them to the spiffs, ATI apparently does not believe the Contract covered the spiffs at all.  Complaint ¶ 73-74.  In an evident effort to hedge their bets, the plaintiffs have elected to plead unjust enrichment in the alternative, in the event that the fact-finder disagrees with them that the Contract contemplated spiff-distribution, but finds nonetheless that it was an act of unjust enrichment to withhold the spiffs.  ATI's less-than-clever attempt to argue the unjust enrichment claim should be dismissed, without conceding that they are covered by the Contract, fails.

All parties are in agreement that the plaintiffs cannot recover under both a theory of breach of contract and a theory of unjust enrichment.  See Opposition at 25.  However, Federal Rule of Civil Procedure 8(d)(3) expressly permits the pleading of inconsistent claims and theories.  Where a plaintiff has pled that there is a dispute as to

---

[32] Though the plaintiffs omitted to cite to cases in New York and West Virginia, the principle is the same in New York.  See Loheac v. Children's Corner Learning Center, 51 A.D.3d 476 (N.Y. App. Div. 2008).  The law of West Virginia does not appear to preclude such causes of action from being brought in tandem.  See, e.g., Ringer v. John, 230 W. Va. 687 (2013) (permissible for counterclaim sounding in unjust enrichment where valid contract governing dispute existed).

whether a contract expressly addressed the allocation of a certain sum, and has sought recovery under either breach of contract or unjust enrichment, it would be improper to dismiss the unjust enrichment claim at the Rule 12(b)(6) stage simply because there are possible factual circumstances under which the two claims could not be recovered upon simultaneously.  Intermed, Inc. v. Alphamedica, Inc., Case No. 09-CV-762, 2009 WL 5184195, at *6 (D. Conn. Dec. 21, 2009).  For these reasons, ATI's Motion to Dismiss as to Count XIII is denied.

## V.    CONCLUSION

ATI's Motion to Dismiss (Doc. No. 52) is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED WITHOUT PREJUDICE** as to Counts II, VII, and IX, and **GRANTED** as to Counts V, VI (as to all plaintiffs except the Eleven Plaintiffs), VIII, X, XI, and XII, and Counts III and IV as to plaintiffs JAS Technology, Inc.; Central Office Products, Inc.; Russell Wireless, LLC; and T.C. Wireless, Inc.  The Motion is **DENIED** as to Counts III and IV as to plaintiffs LHG Stores, LLC; Corridor Ventures, Inc.; EMG 1125 Lexington Ave., LLC; EMG Broadway, LLC; EMG St. Marks, LLC; EMG Delancey Street, LLC; and Entrepreneur Investment Corp., and also as to Counts VI (as to only the Eleven Plaintiffs) and XIII. The plaintiffs' Motion for Leave to Amend the Complaint (Doc. No. 67) is **DENIED AS MOOT** without prejudice to further move for leave to amend.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 12th day of January, 2016.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge